UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

DANNY WILLIAMS,

                Plaintiff,

- against -

DEPARTMENT OF CORRECTIONS,

                Defendant.
------------------------------------------------------------X

**OPINION AND ORDER**

11 Civ. 1515 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I. INTRODUCTION

      Pro se plaintiff Danny Williams, an inmate in the custody of the New York City Department of Correction ("DOC"), brings this action pursuant to 42 U.S.C. § 1983 ("section 1983"). Plaintiff alleges that while incarcerated at the Vernon C. Bain Center ("VCBC") at Rikers Island, he was forced to wear non-supportive, DOC-issued footwear that resulted in a number of slip and fall accidents and caused him extreme pain in his calves and feet. Defendant now moves to dismiss the Complaint on the following grounds: (1) plaintiff was not truthful in his application to proceed *in forma pauperis*; (2) plaintiff has not alleged facts giving rise to a constitutional violation; (3) DOC is not a suable entity; and (4) plaintiff has failed to exhaust available administrative remedies as mandated by

1

the Prison Litigation Reform Act of 1995 ("PLRA").[1]

## II. PLAINTIFF'S ALLEGATIONS

At all times relevant, plaintiff was in DOC custody.[2] During the intake process at the VCBC, plaintiff claims that correction officers took his sneakers, gave him a voucher, and forced him to wear DOC-issued footwear that were "poorly constructed with no support for the foot or cushion for the soles."[3] Plaintiff further alleges that "within a couple of months of wearing the non-supportive footwear, [he] sustained a number of injuries, including slips and falls."[4] Plaintiff also alleges that he experiences "extreme pain" in his calves and feet.[5] Plaintiff seeks relief in the form of a "ban" on the use of the non-supportive footwear and money damages of $100,000.00.[6]

## III. LEGAL STANDARDS

### A. Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), a

---

[1] 42 U.S.C. § 1997e(a).

[2] *See* Complaint § II(A).

[3] *Id.* § II(D).

[4] *Id.*

[5] *Id.*

[6] *Id.* § V.

court may dismiss a complaint for "failure to state a claim upon which relief can be granted."[7] A court should grant a Rule 12(b)(6) motion to dismiss if the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face."[8] In deciding a motion to dismiss, a court may evaluate the sufficiency of the complaint under the "two-pronged approach" dictated by the Supreme Court in *Ashcroft v. Iqbal*.[9] First, the court "'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"[10] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand a motion to dismiss.[11] Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[12]

---

[7] Fed. R. Civ. P. 12(b)(6).

[8] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[9] 556 U.S. —, 129 S. Ct. 1937, 1950 (2009).

[10] *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1950). *Accord Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010).

[11] *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).

[12] *Id.* at 1950. *Accord Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010).

3

To survive a motion to dismiss, the allegations in the complaint must meet a standard of "plausibility."[13] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[14] Plausibility "is not akin to a probability requirement;" rather, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[15] The *Twombly-Iqbal* standard "applies equally to pro se litigants."[16]

In deciding a Rule 12(b)(6) motion, a court may not consider evidence offered by a party which is outside of the pleadings. Rather, a court is limited to reviewing the four corners of the complaint, any documents attached to that pleading or incorporated in it by reference, any documents that are "integral" to the plaintiff's allegations even if not explicitly incorporated by reference, and facts of which a court may take judicial notice.[17] Finally, the submissions of a pro se

---

[13]   *Twombly*, 550 U.S. at 564.

[14]   *Iqbal*, 129 S. Ct. at 1949 (quotation marks omitted).

[15]   *Id.* (quotation marks omitted).

[16]   *Hobson v. Fischer*, No. 10 Civ. 5512, 2011 WL 891314, at *3 (S.D.N.Y. Mar. 14, 2011).

[17]   *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *Leonard F. v. Israel Disc. Bank*, 199 F.3d 99, 107 (2d Cir. 1999).

litigant should be held "'to less stringent standards than formal pleadings drafted by lawyers . . . .'"[18] District courts should "read the pleadings of a pro se plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'"[19]

### B. Exhaustion Under the PLRA

The PLRA mandates exhaustion by prisoners of all administrative remedies before bringing an action regarding prison conditions.[20] The PLRA's exhaustion requirement is mandatory.[21] Failure to exhaust is an absolute bar to an inmate's action in federal court: "§ 1997e(a) *requires* exhaustion of available administrative remedies *before* inmate-plaintiffs may bring their federal claims to court *at all*."[22] Because the plain language of section 1997e(a) states "no action shall be brought," an inmate must have exhausted his claims at the time the initial complaint was filed as "[s]ubsequent exhaustion after suit is filed . . . is

---

[18] *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam)).

[19] *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

[20] *See* 42 U.S.C. § 1997e(a) which provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

[21] *See Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001).

[22] *Id.* (quotation marks and citation omitted, emphasis in original).

insufficient."[23]  Furthermore, the United States Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."[24]

Before bringing suit in federal court, an inmate must fully present his claim for internal resolution within the correctional facility.  DOC has a well-established administrative grievance process: the Inmate Grievance Resolution Program ("IGRP").[25]  In order to survive a motion to dismiss, an inmate must fully exhaust all administrative remedies, at all levels of appeal.[26]  Thus, the IGRP provides that even where an inmate files a grievance yet receives no response, the inmate must nevertheless exhaust his appeals to the facility warden,

---

[23]   *Id.*

[24]   *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

[25]   The IGRP is a four-step process that requires inmates to: (1) file a complaint with the Inmate Grievance Review Committee ("IGRC") and request a formal hearing, (2) appeal to the facility warden or his designee, (3) appeal to the Central Office Review Committee ("CORC"), and (4) appeal to the New York City Board of Correction.  *See Bush v. Horn*, No. 07 Civ. 3231,  2010 WL 2010 WL 1712024, at *3 (S.D.N.Y. Mar. 2, 2010).

[26]   *See Mendez v. Artuz*, No. 01 Civ. 4157, 2002 WL 313796, at *2 (S.D.N.Y. Feb. 27, 2002) ("[T]he exhaustion requirement is not satisfied until the administrative process has reached a final result.").

the CORC, and the Board of Correction.[27] Finally, "[c]omplaints and communications made outside of formal grievance procedures do not satisfy the PLRA's exhaustion requirement."[28]

## IV. DISCUSSION

### A. Plaintiff's Fraudulent Application to Proceed *In Forma Pauperis*

Plaintiff misled the Court when he made false statements under oath in his Request to Proceed *In Forma Pauperis* ("IFP") application ("IFP Request").[29] Plaintiff's IFP status must therefore be revoked and his Complaint dismissed with prejudice. The ability to proceed IFP is a "privilege provided for the benefit of indigent persons."[30] To discourage abuse of this privilege, the statute provides that "notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . .

---

[27] *See Williams v. City of New York,* No. 03 Civ. 5342, 2005 WL 2862007, at *10 (S.D.N.Y. Nov. 1, 2005).

[28] *Jones v. Rikers Island Care Custody*, No. 07 Civ. 10414, 2010 WL 148616, at *2 (S.D.N.Y. Jan. 14, 2010).

[29] Applicants seeking IFP status must complete a Request to Proceed *In Forma Pauperis* application and declare, under penalty of perjury, that their responses are true and accurate.

[30] *Cuoco v. United States Bureau of Prisons*, 328 F. Supp. 2d 463, 467-68 (S.D.N.Y. 2004).

. the allegation of poverty is untrue."[31]  "It is well-established that an allegation of poverty is untrue when an IFP applicant conceals a source of income in order to gain access to a court without prepayment of fees."[32]

Plaintiff submitted an IFP Request in which he stated that he had not received any money, from any source, within the past twelve months.[33]  In addition, plaintiff indicated that he did not have *any* money, including money in a checking or savings account.[34]  Furthermore, plaintiff was clearly warned at the end of the IFP Request, which states: "I understand that the Court *shall dismiss this case* if I give a false answer to any questions in this declaration."[35]  However, between July 7, 2010 (the date plaintiff was incarcerated), and February 23, 2011 (the date plaintiff signed his IFP Request), plaintiff received $2,129.00 in deposits

---

[31]    28 U.S.C. § 1915(e)(2)(A).  *Accord Anderson v. Coughlin*, 700 F.2d 37, 42 (2d Cir. 1982).

[32]    *Cuoco*, 328 F. Supp. 2d at 468 (citing *Thomas v. GMAC*, 288 F.3d 305, 306 (7th Cir. 2002)).  *Accord Dawson v. Lennon*, 797 F.2d 934, 934 (11th Cir. 1986) (affirming dismissal where applicant lied about his property and financial holdings to obtain IFP status).

[33]    *See* Request to Proceed *In Forma Pauperis*, dated February 23, 2011, Ex. D to the 6/10/11 Declaration of John Buhta, Assistant Corporation Counsel, ¶ 3.

[34]    *See id.* ¶ 4.

[35]    *Id.* at p. 2 (emphasis added).

into his personal account at Rikers Island.[36]  As in *Cuoco*, plaintiff "deliberately concealed [his] finances and misrepresented on [his] IFP application to convey the impression that [he] could not pay the filing fee."[37]  Accordingly, plaintiff's IFP status must be revoked and the instant case dismissed.

### B. Lack of a Constitutional Violation

In spite of the extremely liberal pleading requirements afforded pro se litigants, "a civil rights complaint must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983."[38]  Here, plaintiff is claiming a violation of his constitutional rights stemming from the conditions of his confinement, specifically, DOC-issued footwear he was forced to wear at the VCBC.

---

[36] See 6/7/11 Declaration of Lloyd Perell, DOC Consultant, ¶ 3 (stating that the total balance of $2,129 was made up of $1,039 in electronic deposits from third-party money transfers, $832 in on-site deposits from visitors, and $258 from Rikers Island payroll).  This Court can take judicial notice of Perell's summary of the Inmate's Transaction List records, attached as Exhibit A to the Perell Declaration, as these records are regularly maintained by the New York City Department of Correction.

[37] *Cuoco*, 328 F. Supp. 2d at 467.

[38] *Williams*, 2005 WL 2862007, at *3 (quotation marks and citation omitted).

As a pretrial detainee, plaintiff's claims challenging his conditions of confinement are governed by the Fourteenth Amendment Due Process Clause.[39] Nevertheless, a pretrial detainee's claim of deliberate indifference is analyzed under the same test as an Eighth Amendment claim for deliberate indifference.[40] The Eighth Amendment prohibits punishments that are incompatible with "the evolving standards of decency" or those that "involve the unnecessary and wanton infliction of pain."[41] "Unnecessary and wanton infliction of pain" can arise from an inhumane prison condition.[42] When a claim arises out of conditions of confinement, a prisoner claiming a constitutional violation must allege both: (1) that he suffered an objectively serious harm and (2) that officials who caused the violation acted or failed to act with a sufficiently culpable state of mind, *i.e.*, with "deliberate indifference to inmate health or safety."[43] Here, the Complaint fails to satisfy either prong and thus does not allege a constitutional violation.

---

[39] *See Cuoco v. Moritsugo*, 222 F.3d 99, 106 (2d Cir. 2000).

[40] *See Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009) ("Claims for deliberate indifference . . . should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment.").

[41] *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).

[42] *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

[43] *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

### 1. Objectively Serious Harm

Under the Eighth Amendment, States may not deprive prisoners of such "basic human needs" and prison officials may not expose prisoners to conditions that "pose an unreasonable risk of serious damage to [their] future health."[44] "Ultimately, to establish the objective elements of an Eighth Amendment claim, a prisoner must prove that the conditions of his confinement violate contemporary standards of decency."[45]

Only "extreme deprivations are sufficient to sustain a 'conditions-of-confinement' claim."[46] Claims of deliberate indifference to conditions similar to those raised by plaintiff have been found to be insufficiently serious to satisfy the objective prong of the deliberate indifference standard.[47]

---

[44] *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002). *Accord Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities" or pose an "excessive risk to inmate health or safety" to constitute an Eighth Amendment violation).

[45] *Phelps*, 308 F.3d at 185.

[46] *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999).

[47] *See, e.g., Hallett v. City of New York*, No. 08 Civ. 2831, 2010 WL 1379733, at *6 (S.D.N.Y. Mar. 26, 2010) (dismissing plaintiff's claim that he was issued shoes that were too small); *Edwards v. Quinones*, No. 10 Civ. 3141, 2010 WL 2010 WL 4669110, at *3 (S.D.N.Y. Nov. 17, 2010) (dismissing plaintiff's claim that he was provided with inadequate sneakers and noting that the allegations "border[ed] on the patently frivolous"); *Brown v. DeFrank*, No. 06 Civ. 2235, 2006

Here, Williams merely alleges that he was forced to wear "poorly constructed" footwear.  His additional allegation that he experiences "extreme pain" in his calves and the arc of his foot is little more than a conclusory statement that is insufficient to state a claim under section 1983.[48]  The Constitution simply does not mandate comfortable prisons.[49]  Although Williams may have been in discomfort for a period of time from having to wear shoes that he claims were "poorly constructed with no support for the foot or cushion for the soles," this does not constitute a condition of confinement that offends contemporary standards of decency or poses an excessive risk to a prisoner's health or safety.[50]  Accordingly, Williams has failed to establish the first requirement of a deliberate indifference claim.

---

WL 2006 WL 3313821, at *21 (S.D.N.Y. Nov. 15, 2006) (finding pain from foot condition not sufficiently serious and collecting cases); *Alston v. Howard*, 925 F. Supp. 1034, 1040 (S.D.N.Y. 1996) (ankle condition and resulting foot pain requiring the use of special footwear not sufficiently serious to establish a constitutional violation).

[48]   *See Hallett*, 2010 WL 1379733, at *6 (stating that "the fact that Plaintiff's feet hurt for a few weeks does not rise to the level of a medical condition that can support a constitutional claim for inadequate medical care").

[49]   *See Rhodes*, 452 U.S. at 349.

[50]   *See Hallett*, 2010 WL 1379733, at *6.

## 2. Deliberate Indifference

In addition to Williams' failure to allege a sufficiently serious condition, he cannot establish the subjective prong of his deliberative indifference claim: that defendant acted with a sufficiently culpable mind in causing the alleged harm.[51] Williams does not claim that any individual prison official acted with such deliberate indifference as to amount to a constitutional violation; in fact, Williams does not name any individual defendants in the Complaint. Rather, he appears to be alleging that DOC, as an entity, was deliberately indifferent to his allegedly unconstitutional conditions of confinement. In order to prove deliberate indifference of a municipality in the context of failure to provide adequate supervision to its employees, a plaintiff must show "that the need for more or better supervision to protect against constitutional violations was obvious."[52] Here, Williams alleges that DOC failed to provide adequate footwear. In order to establish DOC's deliberate indifference, Williams must show that the "need" for more supportive footwear was similarly "obvious."[53] However, given the lack of severity of the harm, Williams cannot establish that it was obvious that

---

[51]    *See Farmer*, 511 U.S. at 837.

[52]    *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995).

[53]    *Id.*

DOC-issued footwear would result in a constitutional violation. Accordingly, Williams cannot establish deliberate indifference on the part of DOC. Thus, the Complaint must be dismissed for failure to state a cognizable section 1983 claim.

### C. DOC Is Not a Suable Entity

Pursuant to section 396 of the New York City Charter, all legal actions complaining about an agency of the City of New York must be brought against the City of New York, and not against a City agency because City agencies are not suable entities.[54] In cases where a plaintiff fails to comply with this provision, courts have consistently held that the case should be dismissed.[55] By naming a City agency as a defendant herein, Williams has failed to comply with the provisions of section 396. Accordingly, the case against the New York City Department of Correction can be dismissed on this alternative ground.[56]

---

[54] *See* New York City Charter, Ch. 17, § 396.

[55] *See, e.g., Bennerson v. City of New York Dep't of Corr.*, No. 03 Civ. 10182, 2004 WL 2004 WL 902166, at *3 (S.D.N.Y. Apr. 28, 2004) ("Suits against the New York City Department of Correction 'are suits against a non-suable entity and are properly dismissed upon that basis.'") (quoting *Echevarria v. Department of Corr. Servs.*, 48 F. Supp. 2d 388, 391 (S.D.N.Y. 1991)).

[56] Even if the City of New York were substituted as the proper party, plaintiff's action against the municipality could not survive because he failed to exhaust administrative remedies and lied on his IFP application. *See infra.*

### D. Failure to Exhaust Administrative Remedies

Plaintiff failed to exhaust his administrative remedies as required under the PLRA, which states in relevant part:

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.[57]

The requirement that inmates exhaust administrative remedies prior to filing a complaint about prison conditions is mandatory.[58] Lawsuits alleging inadequate living conditions actions brought by inmates are within the scope of the PLRA.[59] Dismissal for failure to exhaust administrative remedies is appropriate where, on the face of the Complaint, it is clear that plaintiff did not exhaust such remedies.[60]

---

[57] 42 U.S.C. § 1997(e)(a).

[58] *See Porter*, 534 U.S. at 524 ("all available" remedies must be exhausted in all cases, including, but not limited to section 1983 and state tort damages claims). *See also Booth v. Churner*, 532 U.S. 731 (2001) ("inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues").

[59] *See, e.g., Orta v. City of New York Dep't of Corr.*, No. 01 Civ. 10997, 2003 WL 2003 WL 548856, at *2 (S.D.N.Y. Feb. 25, 2003) (stating that inmate's challenge to the conditions of confinement – alleging substandard living conditions at Rikers Island – fell within the scope of the PLRA).

[60] *See Jones v. Bock*, 549 U.S. 199, 214-15 (2007); *Davis v. New York*, 311 Fed. App'x 397, 399-400 (2d Cir. 2009).

To determine whether a prisoner has exhausted his administrative remedies, a court must look at three factors: 1) whether the administrative remedies are "available" to the inmate; 2) whether the defendant is estopped from asserting an exhaustion defense; and 3) whether special circumstances exist that would excuse the inmate from fulfilling his exhaustion requirements.[61] As discussed below, administrative remedies were readily available at Rikers Island, defendant is not estopped from asserting an exhaustion defense, and there are no special circumstances that excuse plaintiff from the exhaustion requirement.

### 1. Administrative Remedies Were Available to Plaintiff

The test for assessing availability is an "objective one: that is, would a similarly situated individual of ordinary firmness have deemed them available."[62] When assessing the availability of administrative remedies, "[c]ourts should be careful to look at the applicable set of grievance procedures, whether city, state or federal."[63]

Here, the Complaint itself establishes that administrative remedies were available to plaintiff. Plaintiff alleges that he filed a grievance regarding the

---

[61] *See Hemphill v. New York*, 380 F. 3d 680, 686-91 (2d Cir. 2004).

[62] *Id.* at 688 (quotation marks and citation omitted).

[63] *Mojias v. Johnson*, 351 F.3d 606, 609-10 (2d Cir. 2003).

non-supportive footwear at VCBC and that, subsequent to that filing, the "grievance never got back to me."[64] However, simply engaging in the initial step of the grievance process without taking further action does not satisfy the PLRA's exhaustion requirement.[65] Thus, Williams admittedly failed to pursue all grievance procedures that were available to him.

### 2. Defendant Is Not Estopped from Asserting an Exhaustion Defense

A defendant can be estopped from asserting an affirmative defense of failure to exhaust where the defense is not timely raised or the defendant takes some action to inhibit an inmate from exhausting his administrative remedies, such as threatening an inmate with retaliation or taking affirmative steps to prevent the inmate from exhausting.[66] Here, defendant has not waived its affirmative defense of failure to exhaust, nor is there any allegation that defendant took any action to inhibit plaintiff from participating in the grievance procedure. Accordingly, defendant is not estopped from asserting failure to exhaust administrative remedies as a defense.

---

[64] Complaint § IV(E).

[65] *See Jones,* 2010 WL 148616, at *2.

[66] *See Veloz v. New York*, 339 F. Supp. 2d 505, 515-16 (S.D.N.Y. 2004) (collecting cases).

### 3. No Special Circumstances Excuse Plaintiff from the Exhaustion Requirement

Courts must also consider whether there are special circumstances alleged by an inmate that would justify "the prisoner's failure to comply with administrative procedural requirements."[67] Because Williams has not alleged any circumstances that prevented him from complying with the grievance procedure, he is not excused from the exhaustion requirement.[68] Accordingly, the PLRA mandates the dismissal of the instant Complaint for failure to comply with its exhaustion requirement.

## V. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss the Complaint is granted. The Clerk of the Court is directed to close this motion (Document # 10) and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:   New York, New York
         September 6, 2011

---

[67] *Hemphill*, 380 F.3d at 686.

[68] *See Hargrove v. Riley*, No. 04 Civ. 4587, 2007 WL 389003, at *10 (E.D.N.Y. Jan. 31, 2007) (holding that inmate was not excused from the exhaustion requirement where he failed to allege special circumstances in his complaint).

<div style="text-align:center">**- Appearances -**</div>

**Plaintiff (Pro Se):**

Danny Williams
# 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
GRVC
09-09 Hazen Street
East Elmhurst, NY 11370

**For Defendant:**

John Buhta
Assistant Corporation Counsel
100 Church Street
New York, NY 10007
(212) 788-0874